DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. CROIX

| | |
|---|---|
| CARMEN MCALPIN CLARKE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| MARRIOTT INTERNATIONAL, INC., ) | Civil Action No. 2008-086 |
| ROYAL ST. KITTS BEACH RESORT, LTD., ) | |
| and LUXURY HOTELS INTERNATIONAL ) | |
| MANAGEMENT ST. KITTS, LTD. ) | |
| f/k/a MARRIOTT ST. KITTS MANAGEMENT ) | |
| COMPANY, INC., ) | |
| ) | |
| Defendants. ) | |
| _____) | |

**Attorneys:**
**Lee J. Rohn, Esq.,**
St. Croix, USVI
    *For the Plaintiff*

**Michael J. Sanford, Esq.,**
St. Croix, USVI
    *For Luxury Hotels International Management St. Kitts, Ltd.*
    *and Royal St. Kitts Beach Resort, Ltd.*

**Andrew C. Simpson, Esq.,**
St. Croix, USVI
    *For Marriott International, Inc.*

## MEMORANDUM OPINION AND ORDER

**Lewis, District Judge**

    THIS MATTER is before the Court on Defendant Marriott International, Inc.'s ("Marriott") "Motion to Strike Plaintiff's Motion *in Limine* to Preclude Testimony of Roy Wadding," which was filed on May 14, 2012, (Dkt. No. 270), and Marriott's "Motion to Strike Plaintiff's Oppositions to Defendants' *Daubert* Motions," which was filed on May 16, 2012, (Dkt. No. 278). Plaintiff filed a "Consolidated Response in Opposition to Defendant Marriott's

Various Motions to Strike [] and Cross-Motion to Deem the Documents in Question Timely Filed" ("Consolidated Response") on May 18, 2012, (Dkt. No. 284), and Marriott filed a "Reply to Plaintiff's Consolidated Response to Motions to Strike" ("Reply") on May 23, 2012, (Dkt. No. 289). For the reasons discussed below, the Court will grant Marriott's "Motion to Strike Plaintiff's Motion *in Limine* to Preclude Testimony of Roy Wadding" and will deny Marriott's "Motion to Strike Plaintiff's Oppositions to Defendants' *Daubert* Motions."

## I. BACKGROUND

On March 7, 2012, the parties filed a "Joint Motion to Extend March 15, 2012 Dispositive Motions Deadline Only," requesting that the Court amend the Scheduling Order to, *inter alia*, allow for an April 6, 2012 dispositive and *Daubert* motion deadline. (Dkt. No. 230). On March 13, 2012, the Court granted the Joint Motion and entered an Order providing that the parties had "up to and including **April 6, 2012**, to file dispositive motions, including *Daubert* motions." (Dkt. No. 233) (emphasis in original). Pursuant to that Order, on April 6, 2012, Defendants filed a "Motion *in Limine* to Exclude Expert Opinion of Dr. Gary Jett on the Ground that it is Unreliable," (Dkt. No. 238), and a "Motion *in Limine* to Exclude Expert Opinion of Robert G. Galt on the Ground that it is Unreliable," (Dkt. No. 239). These Motions seek to exclude Plaintiff's experts on *Daubert* grounds.

On April 26, 2012, three days *after* responses to these *Daubert* motions were due (*see* LRCi 7.1(e)(1); Fed. R. Civ. P. 6(d)), Plaintiff filed a Motion for Extension of Time, seeking an enlargement of time, *nunc pro tunc*, until May 9, 2012, within which to file responses to the *Daubert* motions. (Dkt. No. 245). Plaintiff did not file her Oppositions on May 9, 2012, as requested in her Motion for Extension of Time. On May 10, 2012, the Court granted the Motion for Extension of Time, and provided that Plaintiff had up to and including May 10, 2012, within

which to file her Oppositions to the *Daubert* motions. (Dkt. No. 258).[1] In that Memorandum Opinion and Order, the Court found that Plaintiff had failed to demonstrate excusable neglect for her failure to seek an extension of time to respond to the *Daubert* motions before the time to do so had expired, but nonetheless granted her additional time to respond. *Id*. at 11. The Court also ordered Plaintiff's counsel—Attorney Lee Rohn—to discuss the substance of the Memorandum Opinion and Order with her client, provide her with a copy, and obtain and file a statement from Plaintiff that she read and understood the Memorandum Opinion and Order. *Id*. at 13. Plaintiff filed the required statement on May 17, 2012. (Dkt. No. 283).

Plaintiff did not file her Oppositions to the *Daubert* motions on May 10, 2012, as ordered by the Court, nor did she file them at any time between May 10, 2012, and May 14, 2012. On May 15, 2012, Defendant Marriott filed a notice with the Court that Plaintiff had not filed her Oppositions to the *Daubert* motions as ordered by the Court. (Dkt. No. 273). Later that day, Plaintiff filed untimely Oppositions to the *Daubert* motions. (Dkt. Nos. 276 and 277). Plaintiff styled these Oppositions as "*Nunc Pro Tunc,*" but did not address why they were untimely or offer "excusable neglect" for their untimeliness. On May 16, 2012, Defendant Marriott filed the instant Motion to Strike Plaintiff's Oppositions to Defendants' *Daubert* Motions on the grounds that they were untimely. (Dkt. No. 278).

On May 14, 2012, *thirty-eight* days after the April 6, 2012 deadline for filing *Daubert* motions, Plaintiff filed a "Motion *in Limine* (Nunc Pro Tunc) to Preclude Testimony of Roy Wadding and Brief in Support," seeking to exclude the expert opinion of Roy Wadding, an

---

[1] That Memorandum Opinion and Order resolved two other Motions for Extension of Time filed by Plaintiff—granting a request for more time to file Oppositions to Defendants' two Motions for Summary Judgment and denying a request for more time to file Motions *in Limine* and respond to Defendants' Motions *in Limine*. (*See* Dkt. No. 258 at 2-3).

expert for Defendant Marriott, on *Daubert* grounds. (Dkt. No. 267 at 5-8). The Motion did not address why it was filed late. On May 14, 2012, Defendant Marriott filed the instant Motion to Strike Plaintiff's Motion *in Limine* to Preclude Testimony of Roy Wadding, on the grounds that it was untimely. (Dkt. No. 270). On May 14, 2012, Defendant Marriott also filed a Motion to Stay its response to Plaintiff's Motion *in Limine* (Nunc Pro Tunc) to Preclude Testimony of Roy Wadding, which the Court granted on May 17, 2012. (Dkt. No. 280).

Plaintiff filed a Consolidated Response on May 18, 2012, in which she offers several reasons for the untimely Oppositions to Defendants' *Daubert* motions and her untimely *Daubert* motion, and argues that those reasons constitute good cause and excusable neglect for the untimely filings. (Dkt. No. 284). Marriott filed its Reply on May 23, 2012. (Dkt. No. 289).

## II. <u>DISCUSSION</u>

### A. Applicable Legal Principles

Rule 6 of the Federal Rules of Civil Procedure provides that "[w]hen an act may or must be done within a specified time, the court may, for good cause, extend the time . . . ." Fed. R. Civ. P. 6(b)(1). "'Good cause' is understood to mean '[a] legally sufficient reason,' and it reflects 'the burden placed on a litigant (usu. by court rule or order) to show why a request should be granted or an action excused.'" *Joseph v. Hess Oil Virgin Islands Corp.*, 651 F.3d 348, 355 (3d Cir. 2011) (quoting *Black's Law Dictionary* 251 (9th ed. 2009)). The "good cause" inquiry "focuses on the moving party's burden to show due diligence." *Race Tires Am., Inc. v. Hoosier Racing Tire Corp.,* 614 F.3d 57, 84 (3d Cir. 2010).

The good cause standard articulated in Rule 6 applies to Rule 16 Scheduling Orders. Fed. R. Civ. P. 16(b)(4) ("A schedule may be modified *only* for good cause and with the judge's consent.") (emphasis added). "The rationale for the 'good cause' requirement for modification of

a court's scheduling order is that 'scheduling orders are at the heart of case management. If they can be disregarded without a specific showing of good cause, their utility will be severely impaired.'" *Unlimited Holdings, Inc. v. Bertram Yacht, Inc.,* 2008 WL 4642191, at *6 (D.V.I. Oct. 15, 2008) (quoting *Koplove v. Ford Motor Co.,* 795 F.2d 15, 18 (3d Cir. 1986)). "To establish good cause under Rule 16, the party seeking the extension must show that the deadlines set forth in the scheduling order cannot reasonably be met despite the diligence of the party seeking the extension." *Bell v. Lockheed Martin Corp.,* 2011 WL 1467365, at *4 (D.N.J. Apr. 18, 2011).

Federal Rule of Civil Procedure 6(b)(1) further states that "[w]hen an act may or must be done within a specified time, the court may, for good cause, extend the time . . . on motion made after the time has expired if the party failed to act because of excusable neglect." Fed. R. Civ. P. 6(b)(1)-(1)(B). Excusable neglect is a broad inquiry and "determining whether neglect is excusable is an 'equitable' determination that 'takes account of all relevant circumstances surrounding the party's omission.'" *In re O'Brien Envtl. Energy, Inc.*, 188 F.3d 116, 125 (3d Cir. 1999) (quoting *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. Partnership,* 507 U.S. 380, 395 (1993). In *Pioneer*, the Supreme Court articulated four "excusable neglect" factors: "the danger of prejudice to the [non-moving party], the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith." 507 U.S. at 395. The moving party carries the burden of demonstrating excusable neglect. *Glasgow v. Veolia Water North America Operating Servs. LLC*, 2011 WL 3471963, at *3 (D.V.I. Aug. 5, 2011) (citing 10 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure Civil § 1165 at 621–22 (3d ed. 2011)).

Thus, "good cause" for an extension of time within which to submit a filing, and "excusable neglect" for the failure to file a motion for extension of time prior to the expiration of the deadline for the filing are the governing standards here.

### B. Analysis

Many of the reasons given by Plaintiff for the untimely Oppositions to Defendants' *Daubert* motions and her untimely *Daubert* motion are identical to those presented by Plaintiff's counsel in motions for extensions of time in this and other cases pending before the undersigned District Judge. *See* Dkt. No. 258; *see also Acosta v. Hovensa, LLC*, 2012 WL 1848391 (D.V.I. May 21, 2012); *Darrah v. Virgin Islands ex rel. Juan F. Luis Hosp.*, 2011 WL 6181352 (D.V.I. Dec. 13, 2011). The Court has addressed at considerable length why Plaintiff's proffered reasons for the untimely filings—including counsel's busy schedule and the alleged recent acceleration of this Court's processing of cases—do not constitute good cause or excusable neglect under Federal Rule of Civil Procedure 6(b)(1). *See* Dkt. No. 258; *Acosta*, 2012 WL 1848391 at *3-5. Accordingly, based on the previously articulated analysis and consistent with the Court's prior rulings, the Court finds that those reasons do not constitute good cause or excusable neglect here.[2]

---

[2] Defendant Marriott's Reply to Plaintiff's Consolidated Response contains what Marriott presents as a history of untimely filings by Plaintiff's counsel in other cases in this jurisdiction over the past fifteen years. (*See* Dkt. No. 289). From this history and the Court Orders included with Defendant's Reply, it is apparent that the undersigned Judge is not the first to inform Attorney Rohn and her firm that a busy schedule is an insufficient justification for an untimely filing. *See, e.g.*, Dkt. No. 289-3, Civil Case. No. 1991-191, Aug. 9, 1995 Order Denying Motion to Have Summary Judgment Conceded and Granting Brief Extension for Response ("The Court is unimpressed with the numerous and weighty matters plaintiff's attorneys are involved in. As previously stated, plaintiff's attorneys must either accept fewer cases or hire more help."); Dkt. No. 289-4, Civil Case No. 1996-26-F, May 16, 1996 Order Granting Limited Extension of Time ("If the law firm cannot cope with its volume of business in a timely manner it must either

Plaintiff also claims that a May 10, 2012 "breach . . . [of] the Firm's firewall . . . resulted in the Firm not receiving notice of the Court's May 10, 2012, Order in a timely fashion." (Dkt. No. 284 at 9). This excuse comes only in the form of argument by counsel—Plaintiff does not include an affidavit or declaration from anyone at her counsel's firm attesting to the alleged firewall breach. *See Gautier-James v. Hovensa, L.L.C.*, 2012 WL 113777, at *3 n.4 (D.V.I. Jan. 13, 2012) (finding no excusable neglect for untimely motion for reconsideration when "Plaintiff has not provided any declarations from her counsel or her counsel's staff substantiating any of the facts surrounding the delay in filing the Motion for Reconsideration.") (collecting cases). Further, even if there was a firewall breach on May 10, 2012, this does not explain or excuse Plaintiff's failure to file her Oppositions to Defendants' *Daubert* motions on or before May 9, 2012—the deadline that she requested in her Motion for an Extension of Time, (Dkt. No. 245)— or her failure to file the Oppositions until May 15, 2012—five days after the alleged firewall breach. Moreover, Plaintiff does not even attempt to link the alleged May 10, 2012 firewall breach to her *thirty-eight* day late *Daubert* motion. Thus, the alleged firewall breach does not constitute good cause or excusable neglect for the untimely filings.

Finally, Plaintiff claims that the filing by Defendants of their two timely *Daubert* motions and two timely Motions for Summary Judgment on April 6, 2012, which "attacked every element of Plaintiff's claims, including damages on multiple levels . . . jurisdiction and venue," was a "coordinated attack" by "two firms to pile work on the one firm that represents Plaintiff" and was "intended to try and consume Plaintiff's resources to gain a tactical advantage . . . although nothing prohibits this strategy." (Dkt. No. 284 at 9-10). Contrary to Plaintiff's

---

decrease it numbers of clients or increase its number of attorneys . . . Plaintiff's attorneys are put on notice that future repeat continuances may not be granted in such circumstances."). And, it is equally apparent that Attorney Rohn has continued to advance the same argument nonetheless.

assertion, there is nothing insidious about multiple defendants filing motions for summary judgment or *Daubert* motions on the Court ordered deadline for doing so. Further, Plaintiff, who has routinely sought extensions of time in this case, (*see, e.g*., Dkt. No. 25 (Motion for Extension of Time to Complete Discovery); Dkt. No. 52 (Motion for Extension of Time to File Opposition to Motion for Summary Judgment); Dkt. No. 251 (Motion for Extension of Time to File Opposition to Motion for Summary Judgment)), is hardly in a position to cry foul when Defendants file motions *within* the time allowed for doing so. Moreover, that these four motions were all filed on April 6, 2012, is the direct and foreseeable consequence of the "Joint Motion" filed by *all the parties*—including Plaintiff—on March 7, 2012, requesting that the dispositive and *Daubert* motion deadlines be extended from March 15, 2012, to April 6, 2012. (Dkt. No. 230). Accordingly, Plaintiff has not demonstrated through this line of argument that her failure to timely file her Oppositions to Defendant Marriott's *Daubert* motions was the result of excusable neglect. Nor has she explained how this argument bears on her untimely *Daubert* motion.

Despite the lack of good cause or excusable neglect for the untimely filing of Plaintiff's Oppositions to Defendants' *Daubert* Motions, the Court will, in its discretion, accept the untimely Oppositions. The Court repeats the now all-too-familiar mantra that these untimely filings are accepted solely in the Court's discretion and that Plaintiff (and her counsel) should be mindful that "the Court will not continue to afford counsel and their clients this privilege." *Acosta*, 2012 WL 1848391 at *5.

Plaintiff's untimely Motion *in Limine* to Preclude Testimony of Roy Wadding, however, is a different matter. The Motion to Preclude Testimony of Roy Wadding was filed *over a month* after the *Daubert* motion deadline. The Court will not permit Plaintiff to launch a challenge to

Defendant's expert *thirty-eight* days after the deadline has expired without a showing of good cause or excusable neglect. Plaintiff's *Daubert* motion comes over a month after an already extended deadline and, as discussed above, Plaintiff's excuses for the late filing come nowhere close to meeting the standard for "excusable neglect" required by Federal Rule of Civil Procedure 6. Accordingly, the Court will grant Defendant Marriott's Motion to Strike Plaintiff's Motion *in Limine* to Preclude Testimony of Roy Wadding.

### III. CONCLUSION

For the reasons stated above, the Court will grant Defendant Marriott's Motion to Strike Plaintiff's Motion *in Limine* to Preclude Testimony of Roy Wadding and will deny Marriott's Motion to Strike Plaintiff's Oppositions to Defendants' *Daubert* Motions. Plaintiff's Oppositions to Defendants' *Daubert* motions will be accepted by the Court.

**UPON CONSIDERATION** of Defendant Marriott's Motion to Strike Plaintiff's Motion *in Limine* to Preclude Testimony of Roy Wadding and Marriott's Motion to Strike Plaintiff's Oppositions to Defendants' *Daubert* Motions, Plaintiff's Consolidated Response, Defendant Marriott's Reply, the entire record herein, and for the reasons stated above, it is hereby

**ORDERED** that Defendant Marriott's Motion to Strike Plaintiff's Motion *in Limine* to Preclude Testimony of Roy Wadding is **GRANTED**; and it is further

**ORDERED** that Plaintiff's Motion *in Limine* to Preclude Testimony of Roy Wadding is **STRICKEN** from the docket; and it is further

**ORDERED** that Defendant Marriott's Motion to Strike Plaintiff's Oppositions to Defendants' *Daubert* Motions is **DENIED**; and it is further

**ORDERED** that Plaintiff's Oppositions to Defendants' *Daubert* Motions are accepted by the Court.

**SO ORDERED**.

Date: June 18, 2012 _____/s/_____
WILMA A. LEWIS
District Judge