## DISTRICT COURT OF THE VIRGIN ISLANDS
## DIVISION OF ST. CROIX

CARMEN McALPIN CLARKE,    )
      )
     **Plaintiff,**    )
     v.    )     **Civil Action No. 2008-0086**
      )
MARRIOTT INTERNATIONAL, INC.,    )
ROYAL ST. KITTS BEACH RESORT, LTD.,  )
and LUXURY HOTELS INTERNATIONAL    )
MANAGEMENT ST. KITTS, LTD.    )
f/k/a MARRIOTT ST. KITTS MANAGEMENT )
COMPANY, INC.,    )
      )
     **Defendants.**    )
_____)

**Attorneys:**
**Lee J. Rohn, Esq.,**
**Mary Faith Carpenter, Esq.,**
St. Croix, U.S.V.I.
    *For Plaintiff*

**Andrew C. Simpson, Esq.,**
**Emily Shoup, Esq.,**
St. Croix, U.S.V.I.
    *For Defendant Marriott International, Inc.*

**Michael J. Sanford, Esq.,**
**Thomas G. Kraeger, Esq.,**
**Bruce D. Specter, Esq.,**
St. Croix, U.S.V.I.
    *For Defendants Luxury Hotels International Management St. Kitts, Ltd.*
    *and Royal St. Kitts Beach Resort, Ltd.*

## <u>MEMORANDUM OPINION</u>

**Lewis, Chief Judge**

THIS MATTER comes before the Court following the Court's May 26, 2017 Order and

accompanying Memorandum Opinion (Dkt. Nos. 381, 382) granting Plaintiff Carmen McAlpin

Clarke's ("Plaintiff") Motion for Reconsideration (Dkt. No. 355) and vacating the Court's prior

Order and accompanying Memorandum Opinion (Dkt. Nos. 352, 353) granting summary judgment in favor of Defendants Marriott International, Inc. ("Marriott"), Royal St. Kitts Beach Resort, Ltd. ("Royal St. Kitts") and Luxury Hotels International Management St. Kitts, Ltd. f/k/a Marriott St. Kitts Management Company, Inc. ("Luxury Hotels") (collectively, "Defendants"). In light of an argument raised by Marriott in response to Plaintiff's Motion for Reconsideration that the law of St. Christopher and Nevis (hereinafter, "St. Kitts")—as opposed to Virgin Islands law—applies in this case, the Court ordered supplemental briefing on the choice of law issue. (Dkt. No. 378). After briefing by the parties (Dkt. Nos. 383, 384, 386, 387), a status conference was held on August 14, 2018.

For the reasons that follow, the Court finds that St. Kitts premises liability law governs this case. The Court further finds that the analysis applied by the Court in its Memorandum Opinion granting summary judgment in favor of Defendants (Dkt. No. 353) remains valid under St. Kitts premises liability standards. Accordingly, the Court will enter summary judgment in favor of Defendants and will dismiss Plaintiff's claims.

## I. FACTUAL AND PROCEDURAL BACKGROUND

This case arises out of a slip and fall incident occurring in a bathtub at the St. Kitts Marriott Resort and Royal Beach Casino on St. Kitts on June 27, 2008. Plaintiff's First Amended Complaint (Dkt. No. 63) brings tort claims in negligence against Defendants. Plaintiff maintains that Defendants breached their duty of care to Plaintiff by negligently failing to have bathmats in the bathtubs at the St. Kitts hotel and by failing to warn Plaintiff about the unsafe condition of the bathtub, resulting in Plaintiff's fall and injuries.

Defendants jointly filed a Motion for Summary Judgment on the merits of Plaintiff's negligence claims (Dkt. No. 234), which the Court granted (Dkt. Nos. 353, 354). The Court

concluded that Plaintiff could not establish that Defendants owed her a duty as a matter of law because the slipperiness of a bathtub is a known and obvious danger. (Dkt. No. 353 at 10-13). Although Defendants—as landowners and managers—were liable for injuries caused by hidden and dangerous conditions, they were not liable for physical harm caused by a condition whose danger is known and obvious. *Id.* at 15.

Plaintiff thereafter filed a Motion for Reconsideration of the Court's decision (Dkt. No. 355), which she subsequently supplemented (Dkt. No. 371). In her supplemental memorandum, Plaintiff argued that the Virgin Islands Supreme Court's opinion in *Machado v. Yacht Haven*, 61 V.I. 373 (2014), marked an intervening change in the controlling law applicable to Defendants' Motion for Summary Judgment. (Dkt. No. 371 at 1). The Court agreed, finding that the *Machado* Court had instructed that "the soundest common law rule for the Virgin Islands . . . is that the foreseeability of harm 'is the touchstone of the existence of a land possessor's duty of reasonable ordinary care.'" (Dkt. No. 382 at 8-9 (quoting *Machado*, 61 V.I. at 384)). The Court concluded that—after *Machado*—the proper inquiry in a negligence case under Virgin Islands law "is whether a reasonable jury could conclude that Defendants should have foreseen that Plaintiff could slip and sustain injuries while using the bathtub and should have taken reasonable steps to prevent such injuries." *Id.* at 9. Because the Court did not apply the foreseeability test set forth in *Machado* in ruling on Defendants' Motion for Summary Judgment, but rather concluded that no duty of care existed because the risks associated with the bathtub were open and obvious to Plaintiff, the Court determined that its decision to grant Defendants' Motion for Summary Judgment was incompatible with the new *Machado* standard. *Id.* at 9-11. The Court further determined that the *Machado* decision made clear that the Virgin Islands' comparative negligence statute, 5 V.I.C. § 1451(a), and "its inherent abolition of the implied assumption of risk concept impacts a court's inquiry

regarding both breach *and duty*." *Id.* at 14 (emphasis added). Therefore, the Court's decision "[d]ismissing Plaintiff's claim at summary judgment because the bathtub presented an open and obvious risk without evaluating whether Plaintiff's injury was foreseeable 'inappropriately place[d] the focus of attention on the plaintiff's actions alone'" in contravention of the dictates of *Machado*. *Id.* at 14.

Applying the *Machado* standard, the Court determined that, when viewed in the light most favorable to Plaintiff, "a reasonable jury could conclude that Defendants should have foreseen that Plaintiff's normal use of the shower could cause her injuries—especially in light of [] past slip and fall incidents. Moreover, it is for the jury to decide any reasonable steps that Defendants should have taken to prevent Plaintiff's injuries." *Id.* at 16. Accordingly, the Court vacated its earlier decision granting Defendants' motion for summary judgment. *Id.* at 17.

Because it concluded that further briefing on the issue was necessary, the Court deferred pending further briefing its consideration of an argument raised by Marriott in response to Plaintiff's Motion for Reconsideration that St. Kitts law—as opposed to Virgin Islands law— governs this case. Specifically, Marriott—now joined by all Defendants—argues that Defendants are entitled to summary judgment regardless of the *Machado* decision because (1) St. Kitts law governs this case; and (2) as was the case under Virgin Islands law before *Machado* was decided, the occupier of a premises owes no duty to protect against "open and obvious dangers" under St. Kitts law. (Dkt. No. 382 at 17). The parties' briefs have been submitted and the matter is ripe for adjudication.

## II.    DISCUSSION

### A.    Waiver or Estoppel

Before turning to the substantive issues raised by the choice of law question, the Court addresses Plaintiff's argument that Defendants waived or should be estopped from advancing an argument that St. Kitts law applies in this case. The Court disagrees.

Plaintiff argues that Defendants waived their opportunity to argue that St. Kitts law should apply by failing to timely comply with the requirements established by Federal Rule of Civil Procedure 44.1 ("Rule 44.1") where a party intends to rely on foreign law. (Dkt. No. 383 at 2). Plaintiff further argues that Defendants' failure to timely submit an expert report or other evidence to fulfill their burden of proving the foreign law of St. Kitts bars Defendants from arguing that St. Kitts law should apply. *Id.* at 3. Alternatively, Plaintiff contends that Defendants should be judicially estopped from changing their position at this point in the litigation with respect to whether a conflict exists between Virgin Islands and St. Kitts law, as Defendants acknowledged in their briefing at summary judgment that the law of negligence is the same in the Virgin Islands and St. Kitts. *Id.* at 5-7.

Rule 44.1 provides:

> A party who intends to raise an issue about a foreign country's law must give notice by a pleading or other writing. In determining foreign law, the court may consider any relevant material or source, including testimony, whether or not submitted by a party or admissible under the Federal Rules of Evidence. The court's determination must be treated as a ruling on a question of law.

FED. R. CIV. P. 44.1. As observed by the Second Circuit, while Rule 44.1 "requires that the parties give notice of the intent to raise foreign law, the Advisory Committee's Notes make clear that Congress deliberately declined to provide 'any definite limit on the party's time for giving the notice of an issue of foreign law." *Rationis Enterprises Inc. of Panama v. Hyundai Mipo Dockyard*

*Co.*, 426 F.3d 580, 585 (2d Cir. 2005) (quoting FED. R. CIV. P. 44.1 Advisory Committee's Notes).

Indeed, the Advisory Committee's Notes recognize that "in some cases the [foreign law] issue may not become apparent until the trial and notice then given may still be reasonable." FED. R. CIV. P. 44.1, Advisory Committee's Notes. To determine whether a party has given reasonable notice that it intends to raise an issue of foreign law, courts should consider "[t]he stage which the case had reached at the time of the notice, the reason proffered by the party for his failure to give earlier notice, and the importance to the case as a whole of the issue of foreign law sought to be raised[.]" *Id.*

Defendants first identified their intent to raise an issue of foreign law in their respective Answers to Plaintiff's First Amended Complaint, wherein they each asserted that "[t]he substantive law of St. Kitts-Nevis, West Indies governs this matter." (Dkt. No. 64 at 4, Dkt. No. 95 at 4; Dkt. No. 102 at 4). The Court finds that by including this assertion in their Answers, Defendants satisfied the notice requirement provided by Rule 44.1. *See Rationis Enterprises*, 426 F.3d at 586 (to satisfy Rule 44.1, "a litigant must provide the opposing party with reasonable notice that an argument [involving foreign law] will be raised, but . . . need not flesh out its full argument at [that] stage") (citing Charles Alan Wright & Arthur R. Miller, FED. PRAC. AND PROC. § 2443, (2d ed.1994)). This is particularly true here where, as described further below, a distinction between the law of negligence in St. Kitts and the Virgin Islands did not arise until after the parties submitted their summary judgment briefings.

The Court also finds that Defendants did not waive their right to argue that St. Kitts law controls by failing to file an expert opinion or other evidence pertinent to the determination of St. Kitts' negligence law at an earlier stage in the proceedings. Plaintiff's argument that Defendants were required to file an expert opinion on this issue by the December 15, 2011 deadline established

by the Court for the identification of experts and submission of expert reports pursuant to Federal Rule of Civil Procedure 26(a)(2) ("Rule 26(a)(2)") is misplaced. (*See* Dkt. No. 383 at 3). As Defendants point out, Rule 26(a)(2) pertains to the disclosure of expert testimony that a party intends to introduce at trial. FED R. CIV. P. 26(a)(2)(A). Rule 44.1 makes clear, however, that the determination of foreign law—here, St. Kitts negligence law—is not a jury question, but instead a question of law for the Court. FED. R. CIV. P. 44.1 ("The court's determination [of foreign law] must be treated as a ruling on a question of law."). Accordingly, Defendants were not bound by the deadline established by the Court for expert witness disclosures under Rule 26(a)(2) with respect to the foreign law question at issue here.

The Court further finds that the fact that Defendants previously took the position that there was no conflict between Virgin Islands and St. Kitts negligence law does not estop Defendants from arguing that there is currently a conflict between Virgin Islands and St. Kitts law. Defendants argue that—although the parties agreed prior to the Virgin Islands Supreme Court's ruling in *Machado* that there was no conflict between Virgin Islands and St. Kitts law—"*Machado* was a sea change in Virgin Islands law," and that "[a]fter *Machado* was decided, St. Kitts law and Virgin Islands law were no longer materially the same" with respect to the question of a landowner's duty to prevent injuries from open and obvious dangers. (Dkt. No. 384 at 7). Indeed, the Court recognized as much in its Memorandum Opinion granting Plaintiff's Motion for Reconsideration, in which it noted that the Virgin Islands Supreme Court's decision in *Machado* marked an intervening change in the controlling law on negligence in the Virgin Islands. It therefore comes as no surprise that Defendants now contend that there is a conflict of laws following the *Machado* Court's conclusion that the foreseeability of harm to a plaintiff is the touchstone of a land possessor's duty of care, regardless of whether a condition on the land was open and obvious.

For all of the foregoing reasons, the Court finds that Defendants neither waived nor are estopped from advancing their arguments that there is a conflict between Virgin Islands and St. Kitts negligence laws, and that St. Kitts law should apply here.

**B.     Determination of St. Kitts Law**

Before the Court can consider whether a conflict exists between the law of the Virgin Islands and the law of St. Kitts, it must be able to make a determination of St. Kitts premises liability law.

"[T]he determination of foreign law in the federal courts is a question of law to be resolved by reference to any relevant information, including that provided by expert witnesses." *Grupo Protexa, S.A. v. All Am. Marine Slip, a Div. of Marine Office of Am. Corp.*, 20 F.3d 1224, 1239 (3d Cir. 1994) (citing FED. R. CIV. P. 44.1; *Merck & Co. v. U.S. Int'l Trade Comm'n*, 774 F.2d 483, 488 (Fed. Cir. 1985)). While Rule 44.1 provides district courts with "broad authority to conduct their own independent research to determine foreign law," it "imposes no duty upon them to do so." *Bel-Ray Co. v. Chemrite (Pty) Ltd.*, 181 F.3d 435, 440 (3d Cir. 1999) (citations omitted). Accordingly, "the burden of adequately proving foreign law to enable the court to apply it in a particular case" generally falls on the parties, and courts will apply the forum's law where the parties fail to satisfy that burden. *Id.* (citations omitted).

Defendants argue that the law of St. Kitts recognizes the "traditional" common law rule that the occupier of a premises owes no duty to protect an invitee from an open or obvious danger on the premises. (Dkt. No. 384 at 6). In support of this contention, Defendants offer the affidavit of Dustin Delany, a lawyer who Defendants represent is admitted to practice in St. Kitts. (Dkt. No. 384-1). In his affidavit—which the Court may consider as "relevant information" in the

determination of foreign law pursuant to Rule 44.1[1]—Mr. Delany represents that because "[t]here is no statutory provision governing occupiers' liability in St. Kitts," common law negligence principles control. *Id.* at 1. Pointing to various decisions of the Eastern Caribbean Supreme Court, Mr. Delany asserts that the common law rule applied to premise occupiers in St. Kitts is that "an occupier . . . owes an invitee or a guest a duty to exercise reasonable care to prevent damage to the invitee from an *unusual* danger known to the occupier or of which the occupier ought to have known," but does not owe a duty to protect against "usual" dangers. *Id.* at 4 (emphasis added).[2]

Eastern Caribbean Supreme Court caselaw provided by Defendants supports this articulation of the duty of care owed by a premises occupier to invitees or guests under the common law as applied in St. Kitts. The Court finds the Eastern Caribbean Supreme Court's decision in *Barratt v. Hawksbill Unlimited*, Claim No. ANUHCV 2009/0343 (Eastern Caribbean Sup. Ct., Antigua and Barbuda, Jan. 25, 2012), to be particularly instructive.

In *Barratt*, a plaintiff brought a claim in negligence against the owners of a hotel in Antigua, alleging that injuries she sustained after falling down a hotel stairwell were caused by the hotel's negligence. The Eastern Caribbean Supreme Court, applying common law principles, observed: "At common law, the occupier of a premises owes an invitee a duty to exercise

---

[1] While it rejects Plaintiff's argument that Mr. Delany's opinion should be disregarded for purposes of determining St. Kitts law (Dkt. No. 387 at 14-15), the Court notes that it has not relied solely on Mr. Delany's opinion in determining St. Kitts law, but instead has relied heavily on the supporting caselaw offered by both parties, which stands on its own as it relates to the Court's determination of St. Kitts law. This caselaw provides a sufficient basis for the Court's determination of St. Kitts law, as reflected herein.

[2] As represented by Mr. Delany, the Eastern Caribbean Supreme Court is the superior court of record for the Member States of the Organisation of Eastern Caribbean States—which includes St. Kitts. (Dkt. No. 384 at 4). The Eastern Caribbean Supreme Court has "unlimited jurisdiction in the Member States," and its "interpretation of law in any one of the Member States is of equal applicable force in any of the other Member States across the region." *Id.*; *see also* ORGANISATION OF EASTERN CARIBBEAN STATES, Institutions of the OECS, https://www.oecs.org/institutions-of-the-oecs (last visited Aug. 16, 2019).

reasonable care to prevent damage to the invitee from an *unusual* danger known to the occupier or of which the occupier ought to have known." *Id.* at ¶ 23. The Eastern Caribbean Supreme Court specifically noted that "the occupier's duty is not an absolute duty to prevent any damage to plaintiff, but is a lesser one of using reasonable care to prevent damage to the plaintiff from an *unusual* danger of which the defendant knew or ought to have known, *and of which the plaintiff did not know or which he could not have been aware.*" *Id.* at ¶ 26; *see also Smith v. Smith*, Claim No. BVIHCV 0018/2003, at ¶ 8 (Eastern Caribbean Sup. Ct., British Virgin Islands, May 18, 2005) (recognizing that the duty owed by a premises occupier is one of "reasonable care to ensure that an invitee is not injured by an unusual danger on the premises of which the occupier knows or should have known"). An "unusual danger," in turn, is a danger that "is not usually found in carrying out the task o[r] fulfilling the function which the invitee has in hand[.]" *Id.* at ¶ 24; *see also Smith*, Claim No. BVIHCV0018/2003, at ¶ 8 (defining an "unusual danger" as "one that is not usually found in carrying out the task or fulfilling the function for which the invitee entered the premises.")). The Eastern Caribbean Supreme Court went on to hold that neither the absence of railings in the stairwell nor the absence of emergency lights could be considered an "unusual danger" for purposes of establishing the hotel's duty of care to plaintiff. *Id.* at ¶ 59.

The Court finds that Defendants have put forward sufficient evidence through Mr. Delany's affidavit and independently through supporting Eastern Caribbean Supreme Court caselaw from which the Court may conclude that—under the common law principles applied in St. Kitts—the duty of care owed by a premises occupier to an invitee is a duty to use reasonable care to protect against "unusual dangers" of which the occupier was or should have been aware and of which the plaintiff was not or could not have been aware. In other words, Defendants have adequately proven St. Kitts law, so as to enable the Court to apply St. Kitts law in this case.

## C.     Whether a Conflict of Law Exists

Having determined that the duty of care owed by a premises occupier under the law of St. Kitts is a duty to use reasonable care to protect against "unusual dangers" of which the occupier was or should have been aware and of which the plaintiff was not or could not have been aware, the Court next considers whether there is a conflict between Virgin Islands and St. Kitts law.

The Court notes as an initial matter that the parties agreed *prior to* the Virgin Islands Supreme Court's decision in *Machado* that there was no conflict between the applicable negligence law of the Virgin Islands and St. Kitts. Nonetheless—despite Plaintiff's argument in support of her Motion for Reconsideration that the Virgin Islands Supreme Court's holding in *Machado* marked an intervening change in controlling law (Dkt. No. 371 at 1)—Plaintiff now contends that there continues to be no conflict between the negligence law of the Virgin Islands and St. Kitts even in the wake of *Machado*.

In support of this assertion, Plaintiff points outs that the basic elements of a negligence claim are the same in the Virgin Islands and St. Kitts. (Dkt. No. 383 at 7-8). Namely, in both the Virgin Islands and St. Kitts, a plaintiff must establish a duty owed by defendant, breach of that duty, causation, and damages. *Id.* (citing *Antilles Sch. v. Lembach*, 64 V.I. 400, 410 (2016); *Cleston Maynard v. Wayne Jeffers*, Claim No. NEVHCV2004/0131 (Eastern Caribbean Sup. Ct., St. Christopher and Nevis, Dec. 18, 2015)). Plaintiff contends that—as is the case in the Virgin Islands under *Machado*—the foreseeability of a plaintiff's injuries is incorporated as an element of a negligence claim in St. Kitts. *Id.* at 8 (citing *Anne Marie Clarke v. Reese Liburd*, Claim No. SKBHCV2014/0213 (Eastern Caribbean Sup. Ct., St. Christopher and Nevis, July 29, 2016)). She therefore argues that—under the law of both jurisdictions—a genuine dispute exists as to "whether Defendants should have foreseen that Plaintiff could slip and sustain injuries while using the

bathtub and should have taken reasonable steps to prevent such injuries," thereby precluding summary judgment for Defendants. *Id.* (quoting Dkt. No. 377 at 9).

Plaintiff's observation that the basic elements of a negligence claim are the same in both jurisdictions fails to appreciate that the law of the Virgin Islands and the law of St. Kitts have diverged in the wake of *Machado* with respect to the standard applied in premises liability actions—and specifically, with respect to the scope of a landowner's duty of care to entrants on a property. While St. Kitts continues to apply a traditional tripartite common law premises liability approach and limits a landowner's duty of care to the duty to take reasonable measures to protect an invitee from "unusual dangers" of which the invitee was not or could not have been aware, the Virgin Islands has specifically abandoned the traditional approach in favor of an analysis that focuses on the foreseeability of a plaintiff's injury as the "touchstone of premises liability"— including the question whether a landowner owes a duty to protect against such injury. *See Aubain v. Kazi Foods of V.I., Inc.*, 2019 WL 1421188, at *3 (V.I. Mar. 18, 2019) (recognizing that the Virgin Islands employs a "foreseeability [analysis] to determine the duty of care in premises liability actions") (citing *Machado*, 61 V.I. at 386).[3] Thus, although the basic elements of a negligence claim—including the requirement that *damages* sustained by a plaintiff be reasonably foreseeable—are the same in both jurisdictions, the laws of the two jurisdictions diverge with respect to the scope of a landowner's duty of care in premises liability cases.

---

[3] In fact, the Virgin Islands Supreme Court case to which Plaintiff cites for the proposition that there is no distinction between the law of the two jurisdictions recognizes this change in the premises liability analysis applied in the Virgin Islands in the wake of *Machado. See Lembach*, 64 V.I. at 409 ("In the context of a negligence claim based on a premises-liability theory, this Court has eliminated the traditional common-law distinction between invitees, licensees, and trespassers, and has instead concluded 'that the foreseeability of harm is the touchstone of [a land possessor's] duty.'") (quoting *Machado*, 61 V.I. at 384).

The Court thus concludes that a conflict exists between the law of the Virgin Islands and the law of St. Kitts on the issue of a landowner's duty of care in a premises liability action. In the Virgin Islands, a landowner owes a duty to take reasonable care to protect against foreseeable harm to an entrant on his property. The fact that a danger may be "open or obvious" or "usual" does not absolve a landowner of this duty. *Machado*, 61 V.I. 386. In St. Kitts, on the other hand, a landowner owes a duty of reasonable care to prevent damage to a plaintiff only from "an unusual danger of which the defendant knew or ought to have known, and of which the plaintiff did not know or which he could not have been aware." *Barratt,* Claim No. ANUHCV 2009/0343, at ¶ 26. The fact that a danger may be "open or obvious" or "usual" would therefore absolve the landowner of this duty: the danger would not be "unusual," and it would not be one of which the plaintiff "could not have been aware." *Id.* Accordingly, a conflict of law clearly exists between the respective premises liability laws in the Virgin Islands and St. Kitts.

### D. Choice of Law

Because a conflict of law exists, the Court turns to the issue of which jurisdiction's law to apply in this case. Virgin Islands choice of law principles apply to this determination. *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941) (federal courts apply the forum state's conflict of law principles in diversity cases). However, because the Virgin Islands Supreme Court has not opined on the issue of which choice of law principles apply in the Virgin Islands following its decision in *Banks v. Int'l Rental & Leasing Corp.*, 55 V.I. 967 (2011), the parties contend that the Court must perform a *Banks* analysis to identify the soundest choice of law rule for the Virgin Islands.[4]

---

[4] In *Banks v. Int'l Rental & Leasing Corp.*, 55 V.I. 967 (2011), the Virgin Islands Supreme Court held that the Virgin Islands Legislature—by reposing "the supreme judicial power of the Territory" in the Virgin Islands Supreme Court—had established the Virgin Islands Supreme Court's "power

United States jurisdictions have adopted a variety of choice of law approaches. Under the traditional rule of *lex loci delicti*, the parties' rights in personal injury actions are governed by the law of the place where the injury occurred. *Lacey v. Cessna Aircraft Co.*, 932 F.2d 170, 187 (3d Cir. 1991); RESTATEMENT (FIRST) OF CONFLICT OF LAWS § 378 (1934). A majority of jurisdictions have abandoned the traditional rule in favor of the approach outlined in the Restatement (Second) of Conflict of Laws ("Second Restatement"), which maintains a presumption that the parties' rights are governed by the law of the state where an injury occurs "unless, with respect to the particular issue, some other state has a more significant relationship . . . to the occurrence and the parties." RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 146 (1971); *see* Symeon C. Symeonides, *Choice of Law in the American Courts in 2017: Thirty-First Annual Survey*, 66 AM. J. COMP. L. 1, 60 (2018) (surveying the choice-of-law approaches in the fifty states, the District of Columbia, and Puerto Rico, and concluding that 25 jurisdictions have adopted the Second

---

to both interpret local law and modify the common law." *Id.* at 978 (quoting 4 V.I.C. § 21) (additional citations omitted). The *Banks* Court further held that 4 V.I.C. § 21 superseded and altered the mandate contained in 1 V.I.C. § 4 that "[t]he rules of the common law, as expressed in the restatements of the law approved by the American Law institute . . . shall be the rules of decision in the courts of the Virgin Islands in cases to which they apply, in the absence of local laws to the contrary." *Id.* at 972, 979 (quoting 1 V.I.C. § 4). Accordingly, the *Banks* Court held that the Virgin Islands Supreme Court—and, in the absence of binding precedent, the Superior Court—"may determine the common law without automatically and mechanistically following the Restatements." *Id.* at 979 (citations omitted).

In the wake of *Banks* and in the absence of Virgin Islands Supreme Court precedent on a common law rule, courts in the Virgin Islands now conduct what has become known as a "*Banks* analysis" to determine which legal standard to adopt. *Gumbs-Heyliger v. CMW & Assocs. Corp.*, 73 F. Supp. 3d 617, 625 (D.V.I. 2014) (citing *Better Bldg. Maint. of the V.I., Inc. v. Lee*, 60 V.I. 740, 757 (2014); *Gov't of the V.I. v. Connor*, 60 V.I. 597, 603 (2014)). In conducting a *Banks* analysis, courts balance "three non-dispositive factors": "(1) whether any [local or federal] courts [in the Virgin Islands] have previously adopted a particular rule; (2) the position taken by a majority of courts from other jurisdictions; and (3) most importantly, which approach represents the soundest rule for the Virgin Islands." *Id.* (quoting *Simon v. Joseph*, 59 V.I. 611, 623 (2013)) (internal citation omitted) (alteration in original).

Restatement approach). Other jurisdictions perform a "government interest analysis," which entails an identification of "the state policies underlying each law in conflict" and a determination as to "which state's policy would be advanced by having its law apply." *In re Air Crash Disaster at Washington, D.C. on Jan. 13, 1982*, 559 F. Supp. 333, 342 (D.D.C. 1983) (citation omitted).[5] Still other jurisdictions combine these analyses into a "hybrid approach" incorporating both the Second Restatement's "significant relationships" test and an "interest analysis" that considers states' policy interests with respect to a controversy. *Lacey*, 932 F.2d at 187 (quoting *Melville v. American Home Assurance Co.,* 584 F.2d 1306, 1311 (3d Cir. 1978)).

Virgin Islands courts in pre-*Banks* cases generally applied the Second Restatement approach. *See, e.g., Berry v. Am. Airlines, Inc.*, 2000 WL 34205757, at *1 (D.V.I. Aug. 28, 2000), *aff'd*, 263 F.3d 157 (3d Cir. 2001) (applying § 146 of the Second Restatement to determine the applicable law in a personal injury case); *Benjamin v. E. Airlines, Inc.*, 1981 WL 704969, at *2 (D.V.I. July 2, 1981) (noting that 1 V.I.C. § 4 directs Virgin Islands courts to apply the restatements of the law absent contrary local laws, and applying § 146 of the Second Restatement in a personal injury case). Defendants contend that this approach continues to represent the soundest rule for the Virgin Islands under a *Banks* analysis, and should therefore be applied in this case. (Dkt. No. 386 at 7-9). Plaintiff, on the other hand, argues that the soundest choice of law approach is the hybrid approach applied by Pennsylvania courts, and encourages the Court to adopt that approach here. (Dkt. No. 383 at 20-25).[6]

---

[5] Jurisdictions that apply a "government interest analysis" still look to the Second Restatement's "most significant relationship" test for guidance, but consider the state with the "most significant relationship" to be "the state with the greatest interest in applying its law to the issue[.]" *In re Air Crash Disaster,* 559 F. Supp. at 342.

[6] The Court notes generally that—although approaches such as those adopted by the Pennsylvania courts have been described as a "hybrid"—it is difficult to discern any significant distinction

As discussed below, it is unnecessary for the Court to decide which choice of law approach represents the soundest rule for the Virgin Islands in this case because—regardless of the approach adopted—the outcome is the same in this instance.

### 1. Second Restatement Approach

As noted above, the Second Restatement approach to the choice of law analysis in personal injury cases establishes a presumption that the law of the jurisdiction where the injury occurred will apply. RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 146 (1971); *see also Berry*, 2010 WL 3405757 at *1. Because the injury here occurred in St. Kitts, the Second Restatement presumption points to the law of St. Kitts as the applicable law.

The presumption may be overcome, however, in cases where another jurisdiction has a more significant relationship to the occurrence and the parties. *Id.* Whether another jurisdiction has a more significant relationship so as to overcome the presumption is determined by considering the contacts set forth in § 145 along with the "cornerstone principles" contained in § 6 of the Second Restatement. *P.V. ex rel. T.V. v. Camp Jaycee*, 962 A.2d 453, 461 (N.J. Sup. Ct. 2008).[7]

The contacts identified in § 145 of the Second Restatement are: "(a) the place where the injury occurred, (b) the place where the conduct causing the injury occurred, (c) the domicil, residence, nationality, place of incorporation and place of business of the parties, and (d) the place

---

between this "hybrid" approach and the Second Restatement analysis except for the order in which courts consider the relevant interests at stake. As is clear from the discussion below, both approaches involve a consideration of government interests in determining which jurisdiction has the most significant relationship to the occurrence and the parties.

[7] Although New Jersey courts have at times characterized New Jersey's conflict of laws analysis as a "governmental interest" approach, New Jersey courts apply the Second Restatement analysis in torts cases. *See Camp Jaycee*, 962 A.2d at 459-60 (noting that, although "continuing to denominate [the] standard as a kind of governmental interest," New Jersey "adheres to the method of analysis set forth in the [Second] Restatement" and "appl[ies] the Second Restatement's most significant relationship test in tort cases.").

where the relationship, if any, between the parties is centered." RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 145 (1971). "These contacts are to be evaluated according to their relative importance with respect to the particular issue." *Id.*

In this case, both Plaintiff's injury and the conduct causing the injury occurred in St. Kitts. Plaintiff is a resident of the Virgin Islands. Defendant Marriott is incorporated in Delaware, while Defendants Royal St. Kitts and Luxury Hotels are St. Kitts companies. To the extent the fourth § 145 contact is relevant in a personal injury action, the relationship between the parties was centered in St. Kitts—where Plaintiff visited Defendants' hotel and her injuries occurred. *See Camp Jaycee*, 962 A.2d at 462 (noting that the question of where the relationship between the parties is centered is of greater consequence in contract cases than in tort actions).

As a general rule, if "both conduct and injury occur in a single jurisdiction," that jurisdiction's law will apply because the jurisdiction has "an obvious interest in regulating the conduct of persons within its territory and in providing redress for injuries that occur[] there." *Buccilli v. Nat'l R.R. Passenger Corp.*, 2010 WL 624113, at *3 (D.N.J. Feb. 17, 2010) (quoting *Camp Jaycee*, 962 A.2d at 462) (internal quotation and quotation marks omitted). The Second Restatement recognizes an exception to this rule where the occurrence of an injury can be considered merely fortuitous. *Id.* at *3 (citing RESTATEMENT (SECOND) OF CONFLICT OF LAWS, Comment (e) (1971)); *see also Shields v. Consol. Rail Corp.*, 810 F.2d 397, 401 (3d Cir. 1987) (noting that the site of an airplane crash may be categorized as merely fortuitous for purposes of the choice of law analysis). That Plaintiff's injury occurred in St. Kitts cannot be described as merely fortuitous where Plaintiff visited St. Kitts for a three-day vacation. (Dkt. No. 63 at 2); *see Camp Jaycee*, 962 A.2d at 462 (place of an injury was not fortuitous where a plaintiff's presence in Pennsylvania "was not an unanticipated detour on the way to another location, but was the final

destination"). Accordingly, the Court finds that St. Kitts has a more significant relationship to the occurrence and the parties in view of the contacts identified in § 145 of the Second Restatement.

The Second Restatement analysis does not end, however, with a "quantitative" review of the § 145 contacts. Instead, the Court considers the significance of those contacts in light of the "cornerstone principles" identified in § 6 of the Second Restatement to determine whether the interests at issue suggest that one jurisdiction's relationship to the occurrence or parties is more significant than another's. *See Camp Jaycee*, 962 A.2d at 461, 463.[8]

The Court notes that this case implicates competing interests of the two jurisdictions. As Plaintiff points out, the shift in Virgin Islands negligence law exhibited by the Virgin Islands Legislature's adoption of comparative negligence—and the implications of that shift on the issue of a premises owner's duty of care as established in *Machado*—reflects a governmental concern with providing plaintiffs with access to compensation, even where the plaintiff was partially at fault for her injuries, and encouraging "the adjudication of negligence cases by a jury[.]" *Machado*, 61 V.I. at 397-99. Among the Second Restatement's § 6 considerations, this Virgin Islands policy interest—which would be impeded by application of St. Kitts law here—merits consideration in the determination of which jurisdiction's law to apply. *See* RESTATEMENT (SECOND) OF CONFLICT

---

[8] In this regard, the Second Restatement provides that, in the absence of statutory directives:

> [T]he factors relevant to the choice of the applicable rule of law include
> (a) the needs of the interstate and international systems,
> (b) the relevant policies of the forum,
> (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,
> (d) the protection of justified expectations,
> (e) the basic policies underlying the particular field of law,
> (f) certainty, predictability and uniformity of result, and
> (g) ease in the determination and application of the law to be applied.

RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 6 (1971).

OF LAWS § 6 (1971) (recognizing the "relevant policies of the forum" as a factor in the choice of law determination).

On the other hand, St. Kitts' traditional premises liability approach reflects an interest in limiting the circumstances under which a premises owner owes a duty of care (and, therefore, a plaintiff's ability to recover against that premises owner) in instances where a plaintiff's injury did not result from a premises owner's failure to protect against an "unusual danger" of which the plaintiff was not or could not have been aware—an interest that would be impeded here by application of Virgin Islands law. This St. Kitts policy interest also merits consideration in determining which jurisdiction's law to apply. *See* RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 6 (1971) (recognizing "the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue").[9]

It is broadly recognized that jurisdictions hold a strong interest in regulating economic conduct and prescribing liability within their own borders. *See, e.g., LeJeune v. Bliss-Salem, Inc.*, 85 F.3d 1069, 1072 (3d Cir. 1996) (recognizing that "Delaware's interest in regulating purposeful economic activity within its borders would be impaired" if Pennsylvania's strict products liability rule were applied in a personal injury case); *Cooper v. Samsung Elecs. Am., Inc.*, 374 F. App'x 250, 256 (3d Cir. 2010) (observing that New Jersey courts have "'continuously deferred to the rights of other jurisdictions to regulate conduct within their borders,' particularly 'when the conduct is ongoing and directed towards residents and non-residents alike'") (quoting *Camp Jaycee*, 962 A.2d at 466); *Kase v. Seaview Resort & Spa*, 599 F. Supp. 2d 547, 555 (D.N.J. 2009) (noting New Jersey's "powerful interest in the application of its laws to defendants . . . who own

_____

[9] Plaintiff's argument that this St. Kitts interest is not implicated because Marriott admits that it does not do business in St. Kitts ignores that Royal St. Kitts and Luxury Resorts are St. Kitts companies. (Dkt. No. 95 at 1; Dkt. No. 102 at 1).

and operate businesses in New Jersey," particularly where the "allegedly tortious conduct and the resultant injury" both occurred in New Jersey) (citations omitted).

The Court finds that St. Kitts' interest in regulating business activity and prescribing liability within its borders outweighs the Virgin Islands' competing interest in expanding access to compensation for injured plaintiffs under the circumstances here. While the policies of the two jurisdictions sit in competition, application of St. Kitts law is appropriate in view of both its important interest in regulating conduct and prescribing liability within its borders as well as the additional factors identified in § 6 of the Second Restatement—in particular, the "protection of justified expectations" and the "certainty, predictability and uniformity of result." That Plaintiff was intentionally present in St. Kitts at the time of her injury is again critical to this finding. Courts have repeatedly emphasized that "[w]hen a person chooses to travel across state lines, he should expect the laws of the place in which he is located to govern his transactions." *Lebegern v. Forman*, 471 F.3d 424, 433 (3d Cir. 2006) (citing *Colley v. Harvey Cedars Marina*, 422 F. Supp. 953, 957 (D.N.J. 1976) ("By entering the state or nation, the visitor has exposed himself to the risks of the territory and should not expect to subject persons living there to a financial hazard that their law had not created.")); *see also Blakesley v. Wolford*, 789 F.2d 236, 243 (3d Cir. 1986) (noting in a medical malpractice case that "it is only fair that the law of the state to which the patient has voluntarily traveled, and in which the doctor has chosen to conduct the operation, be applied to adjudicate the respective rights, duties, and obligations between the parties"); *Amoroso v. Burdette Tomlin Mem'l Hosp.*, 901 F. Supp. 900, 906 (D.N.J. 1995) ("Citizens do not . . . carry their home state's laws with them wherever they go.").

Further, businesses operating in a given jurisdiction reasonably expect that their operations will be governed by the laws of that jurisdiction. *Kase*, 599 F. Supp. 2d at 554 (noting that the

defendant hoteliers "established and ran their hotel in New Jersey under the reasonable expectation that this business and its operations would be governed by New Jersey law") (citing *Lebegern*, 471 F.3d at 433). Requiring that a business be cognizant of and adjust its standards of care to meet the standards employed in the various jurisdictions from which visitors arrive would work uncertainty and unfairness into the system. *See Colley*, 422 F. Supp. at 957 (noting that a proposal that "would require the community the visitor entered to step up its standards of behavior for his greater safety or lift its financial protection to the level to which he was accustomed . . . would be rejected as unfair").

In view of the foregoing, when the § 145 contacts are considered in light of the "cornerstone principles" in § 6 of the Second Restatement, the result of the analysis continues to point to St. Kitts as the jurisdiction whose law should apply in this matter. Accordingly, the presumption in the Second Restatement that the law of the jurisdiction where the injury occurred—here, St. Kitts—applies has not been overcome by a finding that any other jurisdiction has a more significant relationship to the occurrence or the parties. The Court thus concludes that St. Kitts premises liability law applies in this case under a Second Restatement analysis.

### 2. Hybrid Approach

The same conclusion results if a hybrid approach to the conflicts of law analysis—such as the one employed by the Pennsylvania courts and urged by Plaintiff—is utilized. This approach rejects "the rigid lex loci delicti or place-of-injury rule 'in favor of a more flexible rule which permits analysis of the policies and interests underlying the particular issue before the court.'" *Carter v. Nat'l R.R. Passenger Corp.*, 413 F. Supp. 2d 495, 498 (E.D. Pa. 2005) (quoting

*Griffith v. United Air Lines,* 203 A.2d 796, 805 (Pa. 1964)).[10] It begins with "an 'interest analysis'

of the policies of all interested states" in order to determine whether, in light of that analysis, there

is a "true conflict" or a "false conflict" at issue. *Budget Rent-A-Car Sys., Inc. v. Chappell*, 407 F.3d

166, 170 (3d Cir. 2005) (citations omitted). "A true conflict exists "when the governmental

interests of [multiple] jurisdictions would be impaired if their law were not applied.'" *Id.*

(quoting *Lacey,* 932 F.2d at 187 n.15) (alteration in original). In those cases, the question of which

jurisdiction's law to apply rests on a determination of which jurisdiction has "the most significant

contacts or relationships with the particular issue." *Budget*, 407 F.3d at 170 (internal quotation and

quotation marks omitted). "A false conflict exists if only one jurisdiction's governmental interests

would be impaired by the application of the other jurisdiction's law." *Id.* (quoting *Lacey,* 932 F.2d

at 187). Where there is a false conflict, the law of the only interested jurisdiction is applied. *Id.*

(citations omitted).[11]

    In effect, this "interest analysis" involves a similar review of the two jurisdictions'

underlying policy interests that the Court performed above in the context of its analysis of the

"cornerstone principles" set forth in § 6 of the Second Restatement. As previously discussed, this

case implicates competing policy interests of the Virgin Islands and St. Kitts, in that the differences

between the two jurisdictions' premises liability standards put the Virgin Islands' interest in

broadening the circumstances under which injured plaintiffs have access to recovery at odds with

---

[10] Nonetheless, Pennsylvania courts have continued to recognize the presumption in personal injury cases established by the Second Restatement that "favors the application of the law of the state where the injury occurred unless another state has a more significant relationship to the occurrence and the parties." *Marks v. Redner's Warehouse Markets*, 136 A.3d 984, 988 (Pa. Super. Ct. 2016).

[11] A third scenario may arise in "unprovided-for" cases where "no jurisdiction's interests would be impaired if its laws were not applied." *Budget*, 407 F.3d at 170. In those cases, the law of the place of the injury continues to govern. *Id.* (citation omitted).

St. Kitts' interest in controlling the conduct of businesses and prescribing liability within its borders. As such, a "true conflict" exists here, and the choice of which jurisdiction's law to apply depends on which jurisdiction has "the most significant contacts or relationships with the particular issue." *Budget*, 407 F.3d at 170 (internal quotation and quotation marks omitted).

The Court has already determined above in the context of its Second Restatement analysis that St. Kitts has the most significant relationship to the occurrence and parties in this case. The underlying reasons which support that conclusion are equally applicable here in arriving at the similar conclusion that St. Kitts has the most significant contacts or relationships with the matter before this Court. Accordingly—as is the case under a Second Restatement analysis—St. Kitts premises liability law applies under the hybrid approach.

The cases on which Plaintiff relies to urge a conclusion that Virgin Islands law should apply under the hybrid analysis are inapposite and therefore do not advance her cause. In *Budget*, 407 F.3d 166, a New York resident was permanently paralyzed following a car accident in Pennsylvania involving a car rented from Budget Systems, Inc., ("Budget") in Michigan and driven by a Michigan resident. *Id.* at 169.[12] The Third Circuit considered whether New York or Michigan law on vicarious liability should apply with respect to Budget's liability, as the owner of the vehicle, for the injuries sustained by the New York resident. *Id.*[13] The Third Circuit identified the impetus behind Michigan's law capping vicarious liability for rental car companies as an interest in "preventing rental car companies from deciding not to do business (or to do less

---

[12] At the time, Budget Systems, Inc. was a Delaware corporation that maintained its principal place of business in Illinois. *Id.* at n.1.

[13] The *Budget* Court quickly disposed of any contention that Pennsylvania law should apply, noting that Pennsylvania held no interest in the dispute because there was no connection between Pennsylvania and the parties other than the "chance occurrence of the accident in Pennsylvania." *Budget*, 407 F.3d at 177 n.9.

business) in [] Michigan for fear of unlimited vicarious liability." *Id.* at 177. The Third Circuit doubted whether this interest in attracting rental car business to the state was implicated at all by a decision to apply New York's vicarious liability law in an accident occurring in Pennsylvania and involving injuries to a New York citizen. *Id.* at 177-78. To the contrary, the *Budget* Court found that application of New York's more stringent law would "likely *advance*[] Michigan's interest in making it a relatively attractive place for rental car companies to do business by highlighting the value of Michigan's liability cap." *Id.* at 178 (emphasis in original).

Unlike the case at bar, Michigan's interests in controlling the conduct of businesses and prescribing liability for injuries occurring within its borders were *not* implicated under the facts of *Budget*, where the accident leading to the New York citizen's injuries occurred in Pennsylvania, and not Michigan. Indeed, the Third Circuit noted that Budget could take steps to "preserve the value of Michigan's liability cap" by, for example, limiting the use of vehicles it rented in Michigan to intrastate travel or barring its customers from operating its vehicles in New York. *Id.* In sum, Michigan's interest in the application of its vicarious liability law under the facts of *Budget* was much less significant than St. Kitts' interest in the application of its premises liability law in this case.

The facts of *Carter v. Nat'l R.R. Passenger Corp.*, 413 F. Supp. 2d 495 (E.D. Pa. 2005), are similarly distinguishable. In that case, a Pennsylvania citizen boarded an Amtrak train in Pennsylvania. *Id.* at 498. He suffered serious injuries as he was exiting the train in Maryland, his intended destination. *Id.* Applying Pennsylvania's conflict of laws analysis, the district court considered whether Maryland or Pennsylvania had a greater interest in the application of their

respective laws. *Id.* at 498-500.[14] Pointing to *Budget* as a comparator, the *Carter* Court determined that Maryland did not have any interest in limiting the liability of Amtrak—an interstate common carrier—to protect Maryland's business climate. *Id.* at 500. Noting that Amtrak was an out-of-state corporation and that the railroad's "main tracks traverse[d] [Maryland] between Delaware and the District of Columbia," the *Carter* Court found that Maryland had no interest in the application of its contributory negligence bar because, "*[u]nlike other businesses*, [Amtrak] cannot pick up and leave." *Id.* (emphasis added). The *Carter* Court further determined that—in light of its conclusion that Maryland had no interest in the application of its law—the fact that Maryland was the plaintiff's intended destination did not alter the analysis. *Id.*

As other courts applying Pennsylvania's choice of law analysis have noted in examining *Carter*, "there is a difference in kind between an accident occurring on a 'moving instrumentality'"—such as an Amtrak train or an airplane—"and one arising from 'the use of and condition of property,' which is 'traditionally [a] matter [] of local control.'" *Heichel v. Marriott Hotel Servs., Inc.*, 2019 WL 318256, at *3 (E.D. Pa. Jan. 24, 2019) (quoting *Shuder v. McDonald's Corp.*, 859 F.2d 266, 272 (3d Cir. 1988)); *see also Marks v. Redner's Warehouse Markets*, 136 A.3d 984, 990 (Pa. Super. 2016) (distinguishing cases such as *Carter* involving "interstate common carrier[s]" from cases involving "brick and mortar facilities" that operate within a jurisdiction's borders for purposes of determining the jurisdiction's interest in the application of its law).

In *Heichel*, 2019 WL 318256—a case involving analogous facts to the instant matter—the district court observed that where a hotel guest was injured in a slip-and-fall accident at the

---

[14] Pennsylvania had adopted a comparative negligence statute, while Maryland adhered to the traditional rule of contributory negligence.

Marriott Marquis Hotel in Washington D.C., "Washington D.C. plainly [held] an interest in regulating the liabilities of its hotels, since the hospitality industry is an important component of the business climate." *Id.* at *3. The *Heichel* Court further noted that if it were to adopt the plaintiff's theory that the law of her home jurisdiction should apply, "hotels may well risk becoming subject to the substantive law of the home state of each of its guests—an outcome that Pennsylvania courts have rejected." *Id.* (quoting *Levin by Levin v. Desert Palace Inc.*, 465 A.2d 1019, 1021 (Pa. Super. 1983) ("A hotel owner relies on the laws of the state in which the hotel is located to determine the standard of conduct required of him. It could not be expected that a hotel should comply with the laws of all the states of which its guests are citizens.")). In light of these interests—as well as the significant contacts between the plaintiff, the hotel, and the forum given the plaintiff's intentional presence in Washington, D.C. where "she planned a trip to Washington D.C. and was a guest of the hotel" for at least an overnight stay—the *Heichel* Court determined that Washington D.C. law should apply. *Id.*[15]

In sum, considering the Virgin Islands' and St. Kitts' respective interests in this case and the significant contacts between St. Kitts and the parties given Plaintiff's intentional presence on St. Kitts as a guest at the St. Kitts Marriott Resort and Royal Beach Casino, the Court finds that St. Kitts premises liability law applies in this case under a hybrid choice of law analysis.[16]

---

[15] While the *Carter* Court did not deem the plaintiff's intentional presence in Maryland to be significant under the specific circumstances of that case, the Court notes that the question whether the place of the injury was fortuitous continues to be an important consideration for courts applying Pennsylvania's choice of law analysis. *See, e.g., Acker v. Ray Angelini, Inc.*, 259 F. Supp. 3d 305, 311 (E.D. Pa. 2016) ("Although the site of an accident is no longer controlling, where it is not fortuitous, and where the negligent conduct at issue occurred within a state, that state's interest in 'regulating purposeful economic activity within its borders' would be impaired by application of another state's law.") (quoting *LeJeune*, 85 F.3d at 1072).

[16] Although the approach is not advocated by any party, the Court notes that this same outcome would result were a pure "governmental interest" analysis applied, as that analysis focuses on

### E. Defendants' Entitlement to Summary Judgment

Defendants contend that—if St. Kitts premises liability law is applied—summary judgment should be granted in their favor because "the Court's reasoning when it originally granted summary judgment remains valid and applicable." (Dkt. No. 384 at 8). The Court agrees.

In light of the undisputed facts in this case, the Court found in ruling on Defendants' Motion for Summary Judgment that Plaintiff had failed as a matter of law "to show that there was a dangerous condition which created a duty upon which her negligence claim can be premised." (Dkt. No. 353 at 15). In so holding, the Court found that "[b]ecause a shower's slipperiness while in use is common knowledge, and is open and obvious . . . the potential slipperiness of a shower in normal use is not a dangerous condition against which landowners must protect lest they be found negligent." *Id.* at 12-13 (citing *Dille v. Renaissance Hotel Mgmt. Co., LLC*, 2012 WL 2396666, at *3 (E.D. Mo. June 25, 2012) ("[B]ecause the potential danger created when a bathtub becomes wet is not hidden or difficult to ascertain, there is no duty, as a matter of law, to provide precautions against such conditions.") (collecting cases)). The Court further concluded that "[i]ndividuals are charged with the knowledge that bathtubs are slippery when water and soap are added," and recognized that the "majority of courts charge guests with reasonable use of their senses to keep a lookout for open and obvious conditions in bathrooms, including the fact that water is slippery on tub or shower surfaces." *Id.* at 12 (quoting *Brault by Brault v. Dunfey Hotel Corp.*, 1988 WL 96814, at *9 (E.D. Pa. Sept. 13, 1988), *aff'd*, 870 F.2d 650 (3d Cir. 1989)). Rejecting each of Plaintiff's arguments to the contrary, the Court concluded that there was "no evidence as to the dangerousness [of the bathtub] other than Plaintiff's subjective opinion and the

---

"which state's policy would be advanced by having its law apply." *In re Air Crash Disaster*, 559 F. Supp. at 342. As described above, the Court finds that St. Kitts' interest in the application of its law outweighs the interests of the Virgin Islands in this case.

fact of a fall," and, therefore, there was "no dangerous condition, as a matter of law, that would confer a duty [on Defendants] to warn or protect." *Id.* at 13-15.

As the Court recognized in its May 26, 2017 Opinion on Plaintiff's Motion for Reconsideration, this holding was "premise[d] [o]n the Court's analysis that an open and obvious condition cannot give rise to a duty of care." (Dkt. No. 382 at 10). The Court further recognized that this analysis could no longer stand in light of the Virgin Islands Supreme Court's determination in *Machado* that "the foreseeability of harm is the touchstone of the existence of a land possessor's duty of reasonable ordinary care," and that the "open and obvious" danger doctrine—interpreted as an affirmative defense based on a plaintiff's implied assumption of risk— was not compatible with the Virgin Islands Legislature's adoption of comparative negligence. *Machado*, 61 V.I. at 384 (internal quotation and quotation marks omitted). The Court observed that—in the wake of *Machado*—the proper inquiry under Virgin Islands law was "whether a reasonable jury could conclude that Defendants should have foreseen that Plaintiff's normal use of a shower—including the slipperiness thereof when wet—could have caused her injury, thus requiring Defendants to take reasonable steps to prevent such injuries," *regardless of whether* the danger presented by a shower was open and obvious. *Id.* at 11 (citing *Machado*, 2014 WL 5282116 at *7).

As discussed above, while *Machado* thus altered the applicable premises liability standards in the Virgin Islands with respect to a landowner's duty of care, St. Kitts law continues to recognize that a landowner's duty of care is "one of using reasonable care to prevent damage to the plaintiff from an unusual danger of which the defendant knew or ought to have known, and of which the plaintiff did not know or which he could not have been aware." *Barratt*, Claim No. ANUHCV 2009/0343 at ¶ 26. Whether articulated as an "unusual danger" doctrine or an "open and obvious

danger" doctrine, the import of the two doctrines is the same—a landowner owes no duty of care to protect a plaintiff from dangers that are known, usual, or obvious. Thus, applying St. Kitts premises liability law, the Court's prior determination that a bathtub's slipperiness while in use is common knowledge, and is "open and obvious"—or, put differently, is a danger that is "usually found in carrying out the task o[r] fulfilling the function" for which a bathtub is normally used, *id.* at ¶ 24—continues to control the question of Defendants' entitlement to summary judgment. Under the circumstances of this cases—as described fully in the Court's Memorandum Opinion granting Defendants' Motion for Summary Judgment (Dkt. No. 353)—Defendants owed no duty to Plaintiff under St. Kitts law to prevent the injuries that Plaintiff sustained when she slipped in the hotel bathtub, as the slipperiness of the bathtub did not constitute an "unusual danger . . . of which [] [Plaintiff] did not know or could not have been aware." *Barratt*, Claim No. ANUHCV 2009/0343 at ¶ 26.

In support of her contention that summary judgment is improper even if St. Kitts law is applied, Plaintiff argues that the "unusual danger" doctrine operates as an affirmative defense grounded in assumption of risk under St. Kitts law, and that this affirmative defense must be specifically pleaded or is otherwise waived. (Dkt. No. 383 at 9-10; Dkt. No. 387 at 5-7). Plaintiff contends that Defendants have failed to meet this heightened pleading standard, and that they have therefore waived their reliance on the "unusual danger" doctrine as an affirmative defense. (Dkt. No. 387 at 7).

The Court notes, however, that the case on which Plaintiff relies for this proposition— *Cleston Maynard v. Wayne Jeffers*, Claim No. NEVHCV2004/0131 (Eastern Caribbean Sup. Ct., St. Christopher and Nevis, Dec. 18, 2015)—involved claims against multiple defendants, only one of which was based on a premises liability theory. Reference to the need for specific pleadings was

not made in the context of a discussion of the "unusual danger" doctrine under a premises liability theory, but rather with respect to the distinct doctrine of "*violenti non fit injuria*" as it related to a defendant's alleged negligent operation of a forklift. *Id.* at ¶ 95.[17] In fact, in its discussion of the separate premises liability claim, the *Cleston* Court noted that a third defendant—against whom the premises liability claim was advanced—had "denied that it failed in any duty owed to the claimant" where "[t]here was no unusual danger in the use of the forklift by the second defendant[.]" *Id.* at ¶ 84-85. The judge in *Cleston* dismissed the claims against the third defendant based on his conclusion that the third defendant "*owed the claimant none of the duties of care alleged in its statement of claim.*" *Id.* at ¶ 90 (emphasis added). Contrary to Plaintiff's contention, this holding comports with the Court's finding above that the question of whether a danger is "unusual" goes to the issue of a premises owner's duty of care under St. Kitts law. Accordingly, the Court finds no support for Plaintiff's claim that the "unusual danger" doctrine is an affirmative defense that must be specifically pleaded under St. Kitts law, rather than a factor in the analysis of a premises owner's duty of care to a plaintiff as described in *Barratt*.[18]

---

[17] As described in *Cleston*, the doctrine of *violenti non fit injuria* arises in situations where "[a] person makes an agreement, whether expressly or by implication, to run the risk of harm negligently inflicted by another." *Cleston*, Claim No. NEVHCV2004/0131 at ¶ 95 (quoting CHARLESWORTH & PERCY ON NEGLIGENCE (12th Ed.)). "The defence, which must be pleaded specifically, raises issues whether (a) the claimant agreed to the breach of a duty of care, owed him by the defendant; and (b) the claimant consented to waive his right of action against the defendant in respect to that breach." *Id.* (quoting CHARLESWORTH & PERCY ON NEGLIGENCE (12th Ed.)).

[18] Even if Plaintiff's position regarding whether the "unusual danger" doctrine is an affirmative defense were correct, the Court notes that the determination in *Cleston* that the claimant had failed to sufficiently plead the affirmative defense of *violenti non fit injuria* arose under circumstances where the defense was raised "for the first time[] at the end of the case[,]" and its consideration at that stage would therefore be "fundamentally unfair." *Id.* at ¶ 97. Plaintiff herself recognizes that Defendants in this case have "argued repeatedly that they did no[t] owe Plaintiff any duty of care because the slipperiness of the bathtub was 'open and obvious' and that no dangerous condition existed," and that "Plaintiff was entirely responsible for her own injury[.]" (Dkt. No. 383 at 10). The circumstances of *Cleston* are therefore entirely inapposite.

Plaintiff also asserts that a grant of summary judgment in this case would be procedurally inappropriate under St. Kitts law. Pointing out that bench trials were held in each of the Eastern Caribbean Supreme Court cases cited by Defendants, Plaintiff contends that "St. Kitts negligence law requires a fact finder to determine all substantive issues," and that this case may therefore not "be disposed of on a summary judgment motion" if St. Kitts law is applied. (Dkt. No. 387 at 2-3).[19]

Plaintiff's argument is misplaced. It is well-established that federal courts sitting in diversity apply state substantive law and federal procedural law. *Chamberlain v. Giampapa*, 210 F.3d 154, 158 (3d Cir. 2000) (citing *Erie R.R. v. Tompkins*, 304 U.S. 64, 78 (1938)). It is also well-established that "[t]he standard for summary judgment is a procedural issue that is governed by federal law in diversity cases." *1704 Farmington v. City of Memphis, Tenn.*, 437 F. App'x 387, 389 (6th Cir. 2011) (citing *Shropshire v. Laidlaw Transit, Inc.,* 550 F.3d 570, 573-74 (6th Cir. 2008); *see also McEwen v. Delta Air Lines, Inc.*, 919 F.2d 58, 60 (7th Cir. 1990) ("Federal courts may grant summary judgment under Rule 56 on concluding that no reasonable jury could return a verdict for the party opposing the motion, even if the state would require the judge to submit an identical case to the jury."); *Morello v. Kenco Toyota Lift*, 2015 WL 1400582, at *3 (E.D. Pa. Mar. 26, 2015) (holding that Pennsylvania's procedural rule regarding restricting the evidence to be considered on summary judgment was "not applicable in federal court, as summary judgment in federal court is governed by Fed[eral] R[ule of] Civ[il] P[rocedure] 56") (citing *Gasperini v. Ctr. for Humanities, Inc.,* 518 U.S. 415, 427 (1996)). Accordingly, regardless of the applicable summary judgment standard in St. Kitts, the Court applies the summary judgment standard

---

[19] The Court notes that the premise of Plaintiff's contention is undermined by her recognition that the Eastern Caribbean Supreme Court "provides for summary judgment on cases that warrant being disposed of without a trial." (Dkt. No. 387 at 2 (citing Eastern Caribbean Civ. P. R. 15.2 ("The court may give summary judgment on the claim or on a particular issue if it considers that the . . . claimant has no real prospect of succeeding on the claim or the issue[.]"))).

established by Federal Rule of Civil Procedure 56 in determining whether Defendants are entitled to summary judgment in this case.

In sum, the Court finds that—applying St. Kitts' substantive premises liability law to the undisputed facts of this case—Defendants are entitled to summary judgment under Federal Rule of Civil Procedure 56 with respect to each of Plaintiff's claims. In so concluding, the Court relies on the rationale of its Memorandum Opinion granting Defendants' Motion for Summary Judgment prior to the Virgin Islands Supreme Court's decision in *Machado* (Dkt. No. 353), as the Court's analysis in that opinion remains valid under St. Kitts premises liability law.

## III.    CONCLUSION

For the reasons discussed above, the Court concludes that this case is governed by St. Kitts premises liability law, and that the Court's analysis in its Memorandum Opinion granting Defendants' Motion for Summary Judgment (Dkt. No. 353) remains valid where St. Kitts law is applied. Accordingly, the Court will enter summary judgment in favor of Defendants and dismiss Plaintiff's claims.

An appropriate Order accompanies this Memorandum Opinion.

Date:   August 16, 2019

_____/s/_____
WILMA A. LEWIS
Chief Judge